UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CECELE ALEXIS | CIVIL ACTION |
| VERSUS | NO. 20-2289 |
| HILCORP ENERGY COMPANY, HOT ENERGY SERVICES, INC., and BONVILLIAN MARINE SERVICE, INC. | SECTION M (4) |

**ORDER & REASONS**

Before the Court is a motion by plaintiff Cecele Alexis to remand this matter to the 25th Judicial District Court, Parish of Plaquemines, State of Louisiana.[1] Defendant Hilcorp Energy Company responds in opposition.[2] Having considered the parties' memoranda, the record, and the applicable law, the Court GRANTS the motion finding that, when the plaintiff invokes the savings-to-suitors clause, general maritime law claims are not removable without another independent basis for federal subject-matter jurisdiction, and diversity subject-matter jurisdiction is not present in this case because the Louisiana defendants are properly joined.

**I.   BACKGROUND**

This matter concerns damage to Alexis's oyster lease. Alexis, a Louisiana citizen, owns two Louisiana state oyster leases in the navigable waters of Lake Grand Ecaille in Plaquemines Parish ("the leases").[3] She and her son, Gleason Alexis, have invested time and money in cultivating and harvesting oysters from the leases as a family business.[4]

---

[1] R. Doc. 11.
[2] R. Doc. 12.
[3] R. Doc. 1-2 at 20.
[4] *Id.*

1

Hilcorp, a corporate citizen of Texas,[5] is an oil-and-gas exploration-and-production company.[6] It owns the rights to extract minerals from a Louisiana state oil lease on the navigable waters of Lake Washington Field in Plaquemines Parish ("the well").[7]

Alexis alleges that during the week of June 2, 2019, Hilcorp hired the push barge *Miss Lucy* to service the well.[8] The *Miss Lucy* was owned and operated by defendant Hot Energy Services, Inc., which is a corporate citizen of Louisiana.[9] According to Alexis, the *Miss Lucy* accessed the well via a route through a shallow pipeline canal and then crossed the northern portion of one of her leases.[10] Alexis alleges that Hilcorp knew that (1) the route crossed her lease and (2) the water in the pipeline canal and the oyster lease was too shallow for the *Miss Lucy*, which had a draft of over five feet, not including the depth of the propeller.[11]

Additionally, Alexis alleges that on July 9, 2019, Hilcorp hired the push barge *Lady Crystal* to assist in the plugging and abandonment of the well.[12] The *Lady Crystal* was owned and operated by defendant Bonvillian Marine Services, Inc., a corporate citizen of Louisiana.[13] Alexis alleges that the *Lady Crystal* used a route nearly identical to the one used by the *Miss Lucy*, and that Hilcorp was again aware that (1) the route crossed her lease and (2) the water in the pipeline canal and the oyster lease was too shallow for the *Lady Crystal*, which had a draft of over five-and-a-half feet, not including the depth of the propeller.[14] Alexis further alleges that the *Lady Crystal*, in the course of performing Hilcorp's work, crossed over the southern tip of her lease and made

---

[5] R. Doc. 1 at 3.
[6] R. Doc. 1-2 at 21.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* at 21-22.
[11] *Id.* at 22.
[12] *Id.*
[13] *Id.* at 21.
[14] *Id.* at 22.

multiple passes down the shallow pipeline canal adjacent to her lease, which resulted in sediment flowing out of the pipeline canal and onto her property.[15]

Alexis alleges that Hilcorp, Hot Energy, and Bonvillian Marine, "physically cut through [her] lease or entered into the 500 foot halo surrounding the lease that defines the area requiring waterbottom review."[16] She alleges that these trespasses damaged the leases by creating a soft sediment layer that can hinder oyster growth.[17] Alexis alleges claims for trespass and negligence under Louisiana state law and the general maritime law.[18] She seeks damages and an injunction preventing Hilcorp from further prop washing on her leases without proper governmental authorization and notice to her.[19]

Hilcorp removed Alexis's case to this Court alleging maritime and diversity subject-matter jurisdiction.[20] Hilcorp maintains that Alexis invoked the general maritime law of the United States by alleging that the defendants' "traditional maritime activity" caused her injuries.[21] Hilcorp argues that Hot Energy and Bonvillian Marine are improperly joined, and thus, their citizenship is irrelevant to the diversity subject-matter jurisdiction analysis.[22] Hilcorp says that Alexis has not stated a claim of negligence against Hot Energy and Bonvillian Marine because the allegations are general and conclusory and do not clearly assert that they owed her a duty, which they breached, causing her damage.[23] Hilcorp also argues that Alexis cannot prevail on her trespass claim against

---

[15] *Id.* at 23.
[16] *Id.*
[17] *Id.* Alexis also alleges that defendants are liable under Louisiana Civil Code articles 667-69, which pertain to legal servitudes, and that defendants "unjustly enriched themselves to [her] detriment." *Id.* at 24-25. These allegations will not be discussed herein because Alexis does not address these claims in the motion to remand.
[18] *Id.* at 24-25.
[19] *Id.* at 24-26.
[20] R. Doc. 1.
[21] *Id*. at 2-3.
[22] *Id.* at 3-7.
[23] *Id.* at 4.

3

the non-diverse defendants because she does not allege that they intended any actions that harmed her.[24]

## II.   PENDING MOTION

Alexis argues that this matter must be remanded because a maritime case filed in state court pursuant to the savings-to-suitors clause in 28 U.S.C. § 1331 is not removable absent another independent ground for federal subject-matter jurisdiction.[25]  Alexis further argues that this Court lacks diversity subject-matter jurisdiction because she and defendants Hot Energy and Bonvillian Marine are all Louisiana citizens and she adequately stated claims against Hot Energy and Bonvillian Marine for negligence and trespass.[26]

In opposition, Hilcorp argues that general maritime law claims brought in state court are removable under the 2011 amendments to 28 U.S.C § 1441(b).[27]  While acknowledging that the Fifth Circuit has yet to decide this question, Hilcorp argues that the Seventh Circuit and some district courts within the Fifth Circuit have found cases involving such claims to be removable.[28]  Further, Hilcorp argues that Hot Energy and Bonvillian Marine are improperly joined because Alexis did not adequately allege negligence or trespass claims against them.[29]  And, Hilcorp maintains, as a result, complete diversity exists.

## III.   LAW & ANALYSIS

### A.   Remand Standard

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original

---

[24] *Id.* at 5-6.
[25] R. Doc. 11-1 at 2-3.
[26] *Id.*
[27] The 2011 amendments to § 1441(b) were enacted by the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758.
[28] R. Doc. 12 at 1-4.
[29] *Id.* at 4-8.

jurisdiction." 28 U.S.C. § 1441(a).  Subject-matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("[J]urisdictional facts must be judged as of the time the complaint is filed ...."). Because federal courts have limited jurisdiction, the removal statute is strictly construed, and any ambiguities are construed against removal and in favor of remand to state court. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  The party seeking removal has the burden of establishing "that federal jurisdiction exists and that removal was proper." *Id.*

### B. Removability of General Maritime Law Claims

Federal courts have original jurisdiction over general maritime law claims.  28 U.S.C. § 1333.  Traditionally, general maritime law claims filed in state court pursuant to the savings-to-suitors clause were non-removable. *See In re Dutile*, 935 F.2d 61, 63 (5th Cir. 1991). Hilcorp argues that the 2011 amendments to 28 U.S.C. § 1441 changed the law so that general maritime law claims are now removable.

Section 1441(a), as amended, currently states:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.[30]

28 U.S.C. § 1441(a). Section 1333, the statute granting admiralty jurisdiction to the federal courts, states in pertinent part that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors

---

[30] The prior version of § 1441(a) was identical to the current version, except it included this last sentence: "For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."

5

in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). Hilcorp argues that these statutes, when read together, mean that general maritime law claims are removable under § 1441 because federal courts have original jurisdiction over such claims under § 1333.

>Prior to the 2011 amendments, § 1441(b) read:

>Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

The 2011 amendments removed this subsection (b) and replaced it with provisions related to removal based on diversity of citizenship. *See* 28 U.S.C. § 1441(b). Because general maritime law claims do not arise under the Constitution, treaties, or laws of the United States for the purposes of federal question subject-matter jurisdiction under § 1331, *see Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 378 (1959), the Fifth Circuit had held that general maritime law claims were not removable under the pre-2011 version of § 1441, without some other basis for subject matter jurisdiction. *Dutile*, 935 F.2d at 63. The court reasoned that general maritime law claims were subsumed in the phrase "[a]ny other such action" of the old subsection (b)'s second sentence and construed this language as an "Act of Congress" that "expressly provided" that general maritime law claims were not removable under § 1441(a). *Id.* at 62-63.

As explained above, the current version of § 1441 states that a defendant may remove a civil action over which the federal district court has "original jurisdiction," and omits the pre-2011 amendments modifier that the "original jurisdiction" be "founded on a claim or right arising under the Constitution, treaties or laws of the United States." The current version of the statute also omits what was the second sentence of former § 1441(b): "Any other such action shall be

6

removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

In *Ryan v. Hercules Offshore, Inc.*, 945 F. Supp. 2d 772 (S.D. Tex. 2013), the court reasoned that the removal of the "any other such action" language of § 1441(b) leads to the conclusion that § 1441 no longer prohibits the removal of general maritime law claims brought in state court, and such claims are removable to federal court because they are within the court's original jurisdiction under § 1333.  Certain other district courts have followed *Ryan*, holding that under the current version of § 1441, general maritime law claims are freely removable even in the absence of an independent basis for federal court subject-matter jurisdiction, such as diversity under 28 U.S.C. § 1332 or federal question under 28 U.S.C. § 1331.  *See Costanza v. Accutrans, Inc.*, 2017 WL 4785004, at *5 (E.D. La. Oct. 24, 2017) (citing *Provost v. Offshore Service Vessels, LLC*, 2014 WL 2515412, at *2-5 (M.D. La. June 4, 2014), and *Harrold v. Liberty Ins. Underwriters, Inc.*, 2014 WL 688984, at *4 (M.D. La. Feb. 20, 2014), without analysis of the issue); *Exxon Mobil Corp. v. Starr Indem. & Liab. Co.*, 2014 WL 2739309 (S.D. Tex. June 17, 2014); *Carrigan v. M/V AMC Ambassador*, 2014 WL 358353 (S.D. Tex. Jan. 31, 2014); *Bridges v. Phillips 66 Co.*, 2013 WL 6092803 (M.D. La. Nov. 19, 2013); *Wells v. Abe's Boat Rentals Inc.*, 2013 WL 3110322 (S.D. Tex. June 18, 2013).

The Fifth Circuit has observed, however, that "[t]he vast majority of district courts considering this question have maintained that such lawsuits are not removable."  *Sangha v. Navig8 Ship Mgmt. Private Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) (citing *Langlois v. Kirby Inland Marine, LP*, 139 F. Supp. 3d 804, 809-10 (M.D. La. 2015) (collecting cases), but stating that "there is no binding precedent from this circuit" since "[t]he Fifth Circuit has not yet spoken directly on this issue," quoting *Riverside Constr. Co. v. Entergy Miss., Inc.*, 626 F. App'x 443, 447 (5th Cir.

2015)). To be sure, many sections of this Court have disagreed with the holding and rationale of *Ryan*. *See Gregoire v. Enter. Marine Servs., LLC*, 38 F. Supp. 3d 749 (E.D. La. 2014) (Duval, J.); *see also Great N. & S. Navigation Co. LLC French Am. Line v. Certain Underwriters at Lloyd's London*, 2019 WL 1417305 (E.D. La. Mar. 29, 2019) (Lemelle, J.); *Fleming v. New Orleans Cold Storage & Warehouse Co.*, 2018 WL 2980067 (E.D. La. June 14, 2018) (Lemmon, J.); *Arrington v. Seaonus Stevedoring-New Orleans, LLC*, 2017 WL 4803933 (E.D. La. Oct. 25, 2017) (Lemelle, J.); *Darville v. Tidewater Marine Serv., Inc.*, 2016 WL 1402837 (E.D. La. Apr. 11, 2016) (Brown, J.); *Plaqueimes Par. v. BEPCO, L.P.*, 2015 WL 4097062 (E.D. La. July 7, 2015) (Brown, J.); *Plaquemines Par. v. Palm Energy Offshore, LLC*, 2015 WL 3404032 (E.D. La. May 26, 2015) (Fallon, J.); *Alexander v. Magnolia Marine Transp. Co.*, 2015 WL 1298394 (E.D. La. Mar. 19, 2015) (Duval, J.); *Plaquemines Par. v. Rozel Operating Co.*, 2015 WL 403791 (E.D. La. Jan. 29, 2015) (Africk, J.); *Par. of Plaquemines v. Total Petrochemical & Ref. USA, Inc.*, 64 F. Supp. 3d 872 (E.D. La. 2014) (Zainey, J.); *Yavorsky v. Felice Navigation, Inc.*, 2014 WL 5816999 (E.D. La. Nov. 7, 2014) (Lemmon, J.); *Bisso Marine Co. v. Techcrane Int'l, LLC*, 2014 WL 4489618 (E.D. La. Sept. 10, 2014) (Feldman, J.); *Riley v. LLOG Explor. Co.*, 2014 WL 4345002 (E.D. La. Aug. 28, 2014) (Milazzo, J.); *Henry J. Ellender Heirs, LLC v. Exxon Mobil Corp.,* 42 F. Supp. 3d 812, 820 (E.D. La. 2014) (Fallon, J.); *Grasshopper Oysters, Inc. v. Great Lakes Dredge & Dock, LLC*, 2014 WL 3796150 (E.D. La. July 29, 2014) (Berrigan, J.); *Perrier v. Shell Oil Co.*, 2014 WL 2155258 (E.D. La. May 22, 2014) (Zainey, J.); *Barry v. Shell Oil Co.*, 2014 WL 775662 (E.D. La. Feb. 25, 2014) (Zainey, J.). These courts focused on the "savings to suitors" clause in § 1333, examined the history of maritime removal jurisdiction, and concluded that the 2011 amendments to § 1441 did not change the traditional non-removability of general maritime law claims. As the *Gregoire* court reasoned:

> Under Section 1441(a), removal of civil actions is permitted where the federal district court has "original jurisdiction" over the claim. Section 1333 provides jurisdiction to the federal court exclusively for *in rem* actions and concurrently with the state courts for *in personam* actions; without more, removal of maritime cases instituted in state courts appears to apply, superficially, under Section 1441(a). Yet Congress carefully wrought Section 1333 to balance interests of federalism and recognize historical development of maritime law in state courts by including the saving to suitors clause. Maritime claims initiated in state court are, by definition, brought at common law under the saving to suitors clause as an "exception" to the original jurisdiction of the federal courts. If state court maritime cases were removable under Section 1333, the effect would be tantamount to considering all maritime law claims as part of federal question jurisdiction under Section 1331, eviscerating the saving to suitors clause and undermining the holding and policies discussed at length in *Romero.* That the saving to suitors clause does not guarantee a non-federal forum but only common law remedy, a rule oft cited by the Fifth Circuit, does not lead to the conclusion that the suit is invariably removable. As already established, maritime law claims brought under the saving to suitors clause in state court have traditionally required some other basis of jurisdiction independent of Section 1333 to be removable, supported by practical reasons and sound policy.
>
> Congress' 2011 amendments to Section 1441 do not alter this conclusion. Though *Dutile* determined that "[a]ny other such action" under Section 1441(b) was an "Act of Congress" prohibiting removal of saving to suitors clause cases absent diversity and out-of-state defendants, the removal of this language in no way modified the long-standing rule that general maritime law claims require some other non-admiralty source of jurisdiction to be removable. Congress has not given any indication that it intended to make substantive changes to removal of admiralty matters, and the Fifth Circuit has not indicated otherwise. Despite the present debate over formalistic administration of admiralty law in the context of removal jurisdiction versus adherence to traditional admiralty procedure, this Court is bound to follow the clear precedent before it. Therefore, this Court finds that general maritime law claims are not removable under Section 1333 as part of the original jurisdiction of the court and require an independent basis of jurisdiction.
>
> In determining whether remand is appropriate, the [c]ourt must "scrupulously confine ... jurisdiction to the precise limits which the statute has defined," and construe doubts concerning removal in favor of remand. …

38 F. Supp. 3d at 764-65 (footnotes omitted). The *Gregoire* court concluded, then, that the plaintiff's general maritime law claims were not removable because the defendants did not offer any other valid basis for federal subject-matter jurisdiction, such as diversity.

9

After examining these competing lines of authority, this Court finds that the reasoning of *Gregoire* is persuasive and, like many other sections of this Court, holds that the 2011 amendments to § 1441 did not change the traditional non-removability of general maritime law claims initiated in state court and that such claims are not removable without an independent basis of subject-matter jurisdiction. This Court is aware that the Seventh Circuit in *Lu Junhong v. Boeing Co*, 792 F.3d 805, 817-18 (7th Cir. 2015), held that "§ 1333(1) supplies admiralty jurisdiction" over a case removed from state court, even though it recognized that the savings-to-suitors clause may forbid removal of admiralty claims filed in state court; the federal appellate court simply declined to consider the issue because the plaintiffs did not mention the clause or make the argument. *Id.* Here, Alexis specifically invokes the savings-to-suitors clause, and the weight of the persuasive authority holds that this case is not removable absent another basis of federal subject-matter jurisdiction independent of § 1333.

### B.   Improper Joinder

The other basis of federal subject-matter jurisdiction invoked by Hilcorp is diversity. Pursuant to § 1332, a federal court may exercise diversity subject-matter jurisdiction "over a civil action between citizens of different States if the amount in controversy exceeds $75,000." *Flagg v. Stryker Corp.*, 819 F.3d 132, 135 (5th Cir. 2016). There must be complete diversity between the parties, meaning that no plaintiff may be a "citizen of the same State as any defendant." *Id.* at 136.

Section 1441(b)(2) permits a defendant to "remove a case from state court to federal court on the basis of diversity jurisdiction so long as none 'of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" *Wolf v. Deutsche Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2007-1*, 745 F. App'x 205, 207 (5th Cir. 2018) (quoting 28 U.S.C. § 1441(b)(2); citing *Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017)).

However, the lack of complete diversity will not render an action non-removable if a party has been improperly joined. *Id.* Instead, if a "plaintiff improperly joins a non-diverse defendant, then the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Flagg*, 819 F.3d at 136. The defendant can demonstrate improper joinder by showing either: "'(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"[31] *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013) (quoting *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 333 (5th Cir. 2004)). The improper joinder doctrine is a "'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'" *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)). "Under the second prong (inability to establish a cause of action), the court must determine whether 'there is arguably a reasonable basis for predicting that state law might impose liability.'" *Id.* (quoting *Ross v. Citifin., Inc.*, 344 F.3d 458, 462 (5th Cir. 2003)). "This means that there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Ross*, 344 F.3d at 462 (emphasis in original).

In *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004), the Fifth Circuit explained the procedure used by courts to determine whether a plaintiff has improperly joined a non-diverse defendant. A court first looks "at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant," and "[o]rdinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* at 573. However, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts

---

[31] Hilcorp does not argue that there was actual fraud in the pleadings.

11

that would determine the propriety of joinder ... the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* The Fifth Circuit "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74. In conducting such an inquiry, the district court may "consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003) (citations omitted). Further, "[a]ny contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor." *Id.* (citation omitted).

Hilcorp argues that there is complete diversity as would support federal subject-matter jurisdiction because Hot Energy and Bonvillian Marine – the only defendants sharing the same citizenship as Alexis – are improperly joined in that Alexis has not adequately stated a negligence or trespass claim against them.

### 1. Negligence

To state a claim for negligence under Louisiana law, a plaintiff must allege that: (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant's conduct failed to conform to that standard; (3) the defendant's conduct was the cause-in-fact of the plaintiff's injuries; (4) the defendant's conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Perkins v. Entergy Corp*. 782 So. 2d 606, 611 (La. 2001). Further, La. R.S. 56:423(B)(1) provides that "[a] lessee of oyster beds or grounds who has obtained, recorded, and marked his lease in compliance with the law shall have the right to maintain an action for damages against any person, partnership, corporation, or other entity causing wrongful or negligent injury or damage to the beds or grounds under lease to such lessee." To state a claim for maritime

negligence, "the plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010) (internal quotations and alterations omitted).

In her amended petition, Alexis alleges that Hot Energy and Bonvillian Marine operated their respective vessels.[32] As vessel operators, these defendants had a duty to navigate with reasonable care. Alexis alleges that they breached the duty by navigating their vessels across her leases in waters that were too shallow for the depths of the vessels, and that such breaches caused damage to her oyster beds.[33] Thus, under a Rule 12(b)(6) standard requiring that the complaint be read in the light most favorable to plaintiff, Alexis's allegations are adequate to state plausible negligence claims against Hot Energy and Bonvillian Marine.

### 2. Trespass

Under Louisiana law, the tort of trespass applies to immovable property. *MCI Commc'ns Servs., Inc. v. Hagan,* 74 So. 3d 1148, 1155 n.12 (La. 2011). Oyster leases are considered incorporeal immovable property pursuant to Louisiana Civil Code article 470. *Vekic v. Popich*, 236 So. 3d 526, 535 n.11 (La. 2017). An act of civil trespass is defined as "the unlawful invasion of the property or possession of another," and the elements of the tort are: (1) "intent to enter property that belongs to another (defendant need not know the property belongs to another)" and (2) "physical entrance onto the land of another." *Barney v. Plaquemines Par. Gov't ex rel. President*, 22 So. 3d 1117, 1118-19 (La. App. 2009) (citing *Thibodeaux v. Krouse,* 991 So. 2d 1126 (La. App. 2008)). "[A] defendant may be held liable for an *inadvertent* trespass resulting

---

[32] R. Doc. 1-2 at 21. That Alexis thought it necessary to allege the non-vessel owner/operator Hilcorp's knowledge of the vessels' drafts and courses does not create a deficiency in her allegations concerning Hot Energy and Bonvillian Marine who, as the owners/operators of the vessels, were obviously aware of the drafts and courses.
[33] *Id.* at 21-23.

13

from an *intentional* act." *Terre Aux Boeufs Land Co. v. J.R. Gray Barge Co.*, 803 So. 2d 86, 96 (La. App. 2001) (emphasis in original).

Again, Alexis alleges that Hot Energy and Bonvillian Marine operated their respective vessels.[34]  In doing so, it is implied that each vessel navigated its course intentionally, and that each vessel crossed Alexis's property, causing damage to her oyster beds.[35]  Even if Hot Energy's and Bonvillian Marine's trespasses were inadvertent, they were nevertheless actionable under Louisiana law since they arose from the intentional act of operating the vessels over Alexis's property.  Thus, under a Rule 12(b)(6) standard, Alexis has alleged plausible claims for trespass under Louisiana law against Hot Energy and Bonvillian Marine.

As Alexis has alleged plausible state-law claims for negligence and trespass against Hot Energy and Bonvillian Marine, they are properly joined as defendants.  Because Hot Energy and Bonvillian Marine are citizens of Louisiana, as is Alexis, diversity subject-matter jurisdiction is lacking, and this matter must be remanded to state court.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Alexis's motion to remand (R. Doc. 11) is GRANTED, and this matter is REMANDED to the 25th Judicial District Court, Parish of Plaquemines, State of Louisiana.

New Orleans, Louisiana, this 8th day of October, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[34] *Id.* at 21.
[35] *Id.* at 21-23.

14